Pennsylvania Association of State Mental Hospital Physicians et al., Petitioners *v.* Commonwealth et al., Respondents.

Argued November 20, 1981, before Judges WILLIAMS, JR., MACPHAIL and PALLADINO, sitting as a panel of three.

*Ira Silverstein, Meranze, Katz, Spear and Wilderman,* for petitioners.

*Kathleen F. McGrath,* Deputy Attorney General, with her *LeRoy S. Zimmerman,* Attorney General, and *William S. Rawls,* Executive Deputy Attorney General, for respondents.

OPINION BY JUDGE MACPHAIL, December 21, 1981:

Petitioners[1] have filed a petition for review addressed to our original jurisdiction requesting that Respondents[2] be enjoined[3] from transferring funds,

---

[1] Pennsylvania Association of State Mental Hospital Physicians and A. Maher Mansour, in his capacity as an officer of the Association and individually as a taxpayer in the Commonwealth of Pennsylvania.

[2] Commonwealth of Pennsylvania; Richard Thornburgh, individually and in his capacity as Governor; Helen O'Bannon, individually and in her capacity as Secretary of DPW; and Scott H. Nelson, individually and in his capacity as Deputy Secretary for Mental Health.

[3] Petitioners' request for a preliminary injunction was denied by this Court, per Judge WILLIAMS, on June 29, 1981.

appropriated to the Department of Public Welfare (DPW), to the Medical College of Pennsylvania (MCP) pursuant to a written agreement between Respondents and MCP providing for the management and operation of the Eastern Pennsylvania Psychiatric Institute (EPPI) by MCP. Presently, before this Court for disposition is Respondents' preliminary objection in the nature of a demurrer. For the reasons which follow, we will sustain the preliminary objection.

EPPI was established pursuant to the Act of April 18, 1949, (Act) P.L. 599, *as amended,* 50 P.S. §§581-583.1 to "provide training and teaching to graduate and undergraduate students in the mental health field and [to] conduct research into the causes, prevention, treatment and cure of mental, neurological and related disorders." Section 1 of the Act, 50 P.S. §581. Section 1 of the Act also authorizes agreements, through DPW, by which EPPI may become associated with other medical schools "in providing diagnosis, treatment, training, teaching and research." In 1980, the General Assembly further amended the Act to provide that "[s]uch agreements may provide for the transfer of responsibility by the department for the management and operation of the institute in whole or in part." 50 P.S. §581. Pursuant to this amendment, DPW and MCP entered into a written agreement on January 9, 1981 transferring the responsibility for managing and operating EPPI to MCP. The agreement was effective through June 30, 1981.[4]

From the petition for review it appears that $6,200,000 was appropriated by the General Assembly in a general appropriations bill to DPW for the operation of EPPI for the fiscal year beginning July 1,

---

[4] Respondents' brief informs us that since the filing of the instant petition for review DPW and MCP have renewed their agreement, with modifications and additions, for the period from July 1, 1981 through June 30, 1982.

1980. It is alleged in the petition that these appropriated funds were utilized to make payments to MCP pursuant to the written agreement for the operation of EPPI. Petitioners contend that this payment of appropriated funds to MCP violates Article III, Section 30 of the Pennsylvania Constitution which provides:

> No appropriation shall be made to any charitable or educational institution not under the absolute control of the Commonwealth, other than normal schools established by law for the professional training of teachers for the public schools of the State, except by a vote of two-thirds of all the members elected to each House.

Petitioners argue that since MCP is a private hospital and a charitable or educational institution not under the absolute control of the Commonwealth, and since no special appropriations bill authorizing payments to MCP has been passed by the General Assembly, the transfer of general appropriations funds to MCP is unconstitutional.

Respondents argue, on the other hand, that the payments to MCP by DPW pursuant to the January 9, 1981 agreement do not constitute an appropriation, but rather are reimbursements for services rendered. The agreement and the payments made thereunder are, according to Respondents, authorized by the Act and are not unconstitutional. Accordingly, Respondents contend that the petition for review fails to state a cause of action and should be dismissed.

In considering a preliminary objection in the nature of a demurrer, we must determine whether Petitioners have stated a cause of action, accepting as true all factual averments in the petition and inferences fairly deducible therefrom, and keeping in mind that any doubt as to the existence of a cause of action must be resolved in favor of Petitioners. *Sinwell v. Penn-*

*sylvania Board of Probation and Parole,* 46 Pa. Commonwealth Ct. 429, 406 A.2d 597 (1979).[5]

There can be no doubt that the written agreement for the operation of EPPI is in compliance with and is authorized by the Act. The gravamen of the petition for review is that, while a transfer of *responsibility* to MCP might be constitutional, the use of general appropriations monies to fund that transfer to a charitable or educational institution violates the Constitution and is tantamount to a direct appropriation by the General Assembly to MCP. We must disagree.

We believe that our Supreme Court's reasoning in *Schade v. Allegheny County Institution District,* 386 Pa. 507, 126 A.2d 911 (1956), is applicable to the instant petition. In *Schade* the Court held that it was constitutional for the Institution District to make payments from tax revenues to denominational and sectarian homes for the support and maintenance of neglected or dependent children on order of the Juvenile Court. The Court found that the support of these children was a governmental duty and that the payments did not constitute appropriations within the meaning of Article III, Section 29.[6] The Court recognized that " '[t]he Constitution does not prohibit the State or any of its agencies from doing business with denominational or sectarian institutions, nor from

---

[5] Petitioners' contention that the preliminary objection constitutes a "speaking" demurrer is clearly without merit since it does not plead additional facts not contained in the petition for review. 2 Goodrich-Amram 2d §1017(b) :11 (1976).

[6] The constitutional provision analyzed in *Schade* was Article III, Section 18 of the Pennsylvania Constitution of 1874, now Article III, Section 29. Article III, Section 29 provides in pertinent part:

No appropriation shall be made for charitable, educational or benevolent purposes to any person or community nor to any denominational and sectarian institution, corporation or association. . . .

paying just debts to them when incurred at its direction or with its approval.' " *Schade* at 512, 126 A.2d at 914 (quoting lower court concurring opinion). We consider this analysis equally applicable to Article III, Section 30.

A review of the agreement between DPW and MCP, which is appended to the petition for review, demonstrates that the payments to MCP, made on a monthly basis, are for services rendered by MCP in furtherance of a governmental duty, to wit, the operation and management of EPPI. Petitioners allege in their brief, however, that substantial portions of the monies transferred to MCP are being used for MCP's own purposes. To support this allegation, which is not contained in the petition for review, Petitioners point to the agreement itself. It is our legal conclusion that the contract, while certainly not ruling out the possibility that MCP might benefit therefrom, has as its primary purpose the rendering of and payment for services performed by MCP in operating and managing EPPI.

The agreement in Paragraph 5 explicitly states that payments are for services provided by MCP for which MCP is not otherwise reimbursed.[7] Payments are made on a monthly basis and are adjusted from

---

[7] Paragraph 5 also provides that payments received by MCP from patients, federal or state programs or other third parties for the care of patients belongs to MCP and will not reduce amounts payable by DPW under the agreement. Petitioners contend that this provision permits MCP to be twice reimbursed for the same services —once by the Commonwealth and again by a third party. We find this contention to be without merit. Paragraph 5, read in its entirety, provides simply that MCP may *not* be reimbursed by DPW when it is compensated by some other source, but reimbursement received from another source also cannot *further* reduce amounts payable by DPW. Thus, payments received by MCP from sources other than the agreement, can neither increase nor decrease the amount payable under the agreement.

initial estimates to reflect actual expenditures by MCP for operating and managing EPPI. DPW maintains a general monitoring responsibility over MCP's performance and has the right to terminate the agreement upon ninety days written notice should MCP fail to meet its contractual obligations. In our opinion, the fact that MCP might derive some benefits from its contractual relationship with DPW does not transform payments made pursuant to the agreement into "appropriations" proscribed by Article III, Section 30.

We, accordingly, will sustain Respondents' preliminary objection and dismiss the petition for review.

ORDER

AND Now, this 21st day of December, 1981, the Respondents' preliminary objection in the nature of a demurrer is hereby sustained and the Petitioners' petition for review is dismissed.

